IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 24, 2007

Charles R. Fulbruge III
Clerk

No. 06-60619

In The Matter Of:  T J VOLLBRACHT

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DON  BERRY

Appellant

v.

T J VOLLBRACHT

Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
U.S.D.C. No. 3:04-CV-188

Before HIGGINBOTHAM, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Appellant Don Berry had an altercation with Appellee Travis Vollbracht at the latter's home.  Although the parties dispute some of the surrounding events, they agree that Vollbracht punched Berry multiple times after Berry

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

approached Vollbracht, causing serious injury, and that Berry never hit Vollbracht. Vollbracht was eventually tried and convicted of simple assault in Mississippi state court, MISS. CODE ANN. § 97-3-7 (2001), his self-defense argument failing. Berry sued Vollbracht for civil assault, obtaining a default judgment that was later set aside. Partially as the result of that judgment, Vollbracht filed for bankruptcy. Berry filed an adversary complaint, seeking a ruling that any judgment stemming from the altercation would be non-dischargeable under 11 U.S.C. § 523(a)(6), which renders non-dischargeable debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." The bankruptcy court found the debt dischargeable. The district court affirmed, and Berry appeals.

In Kawaauhau v. Geiger,[1] the Supreme Court held that a doctor's negligent prescription of oral penicillin instead of IV penicillin was not "willful and malicious" conduct under § 523(a)(6). The Court explained that, for a debt to be non-dischargeable under § 523(a)(6), there must be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[2] In explaining Kawaauhau and discussing the dilemma of proving a defendant's subjective motive, we have restated the current test as follows: "The test for willful and malicious injury under § 523(a)(6), thus, is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor."[3] Because debtors generally deny that they had a subjective motive to cause harm,

---

[1] 523 U.S. 57, 59, 64 (1998).

[2] Id. at 61.

[3] Williams v. IBEW Local 250, 337 F.3d 504, 509 (5th Cir. 2003).

most cases that hold debts to be non-dischargeable do so by determining whether "[the debtor's] actions were at least substantially certain to result in injury."[4]

Although the bankruptcy and district courts cited the above cases and the central subjective/objective test, the bankruptcy court, summarily affirmed by the district court, applied only the subjective test, finding that Vollbracht "did not intend the consequences of the seriousness of the blow that he inflicted." But the subjective test requires only that Vollbracht intended some harm, not just serious harm.[5] Here, Vollbracht obviously intended some harm. Moreover, the courts seemingly did not apply the objective test.[6] To the extent they did – concluding, as a matter of law, that Vollbracht's intentional[7] punches were not objectively, substantially certain to cause harm - we disagree. Vollbracht's haymakers, like most garden-variety punches to the face, are objectively very likely to cause harm.

However, the transcript reveals that the lower courts were concerned mainly that Vollbracht's punches were delivered in self-defense, or at least that Vollbracht was less culpable given Berry's actions. We similarly recognize that an injury levied as a legitimate response to someone else's actions is usually the result of a "subjective motive to cause harm" and actions that can have an "objective substantial certainty" of causing harm. Yet such an injury cannot be "willful and malicious" under § 523(a)(6). Consequently, we hold that our two-

---

[4] In re Miller, 156 F.3d 598, 606 (5th Cir. 1998) (discussing whether trade secrets torts were willful and malicious).

[5] One could read the court's statement to mean that Vollbracht did not intend any harm, but that reading is defied by the court's other statements and by the record.

[6] Even if Vollbracht subjectively did not intend any harm, his conduct may still be objectively willful and malicious. See Miller, 156 F.3d at 604 ("Miller's conduct, however, could still be 'willful' under the objective standard, if his acts were substantially certain to result in injury to Abrams.")

[7] The bankruptcy court found, and Vollbracht concedes on appeal, that he intended to punch Berry.

part test must countenance the actions of the injured party. That is, for an injury to be "willful and malicious" it must satisfy our two-part test and not be sufficiently justified under the circumstances to render it not "willful and malicious."

In applying an objective test for willful and malicious behavior, the district court is not estopped from reconsidering question of self-defense.[8] We address the narrower issue of collateral estoppel (issue preclusion[9]) and the broader principle of res judicata (claim preclusion[10]) together here, asking whether the bankruptcy court on remand must adopt the state court judgment – which found that Vollbracht did not act in self-defense – when determining whether Vollbracht's conduct was "willful and malicious." We have noted the difference between these two principles in Shuler, another bankruptcy case, stating that while "'res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and

---

[8] Berry also argues that Vollbracht's Mississippi conviction establishes that he acted willfully and maliciously. The lower courts held, and we agree, that collateral estoppel does not apply to the Mississippi assault conviction, for various reasons. For one, the Mississippi assault statute at issue includes "negligently injuring the body of another." MISS. CODE ANN. § 97-3-7 (2001). If a jury found that Vollbracht acted negligently, the assault conviction would not require finding that Vollbracht's actions were willful and malicious under § 523(a)(6). We recognize that Vollbracht's self-defense argument failed at his criminal trial, hence Berry could argue that the narrow issue of self-defense is foreclosed. However, we do not equate the required showing to establish self-defense at a criminal trial, under Mississippi or any other law, with the showing required to render an injury not "willful and malicious." Self-defense is a technical doctrine of criminal law; our "exception" requires only that an injury otherwise falling under our two-part test is sufficiently justified to render it not "willful and malicious." Even if the criminal self-defense issue were precluded (which it is not), other of Vollbracht's actions may negate a finding of willful and malicious injury. We describe our reasoning in further detail in the text.

[9] See, e.g., White v. World Finance of Meridian, Inc., 653 F.2d 147, 151 (5th Cir. 1981) (defining collateral estoppel as issue preclusion).

[10] See, e.g., id. at 150 (defining "true res judicata" as "claim preclusion").

necessarily decided in a prior suit . . . ."[11] yet we have also recognized the modern tendency to address the two issues under the broader term of "res judicata."[12] In the Fifth Circuit, we generally apply collateral estoppel when "(I) the issue to be precluded [is] identical to that involved in the prior action, (ii) in the prior action the issue [was] actually litigated, and (iii) the determination made of the issue in the prior action [was] necessary to the resulting judgment."[13] For res judicata, we require that "(1) The parties be identical in both suits, (2) a court of competent jurisdiction rendered the prior judgment, (3) There was a final judgment on the merits in the previous decision, and (4) The plaintiff raises the same cause of action or claim in both suits."[14] To determine whether the plaintiff has raised the same claim in two suits, "the critical issue is not the relief requested or the theory asserted but whether plaintiff bases the two actions on [the] same nucleus of operative facts."[15] In bankruptcy cases, however, we have agreed with the Supreme Court and other circuits "that a bankruptcy court faced with a claim of non-dischargeability . . . presented with a state court judgment evidencing a debt is not bound by the judgment and is not barred by res judicata or collateral estoppel from conducting its own inquiry into the character and, ultimately, the dischargeability of the debt."[16] We do allow a bankruptcy court to adopt state holdings, however, where the state court judgments were consent

---

[11] In re Shuler, 722 F.2d 1253, 1255 (5th Cir. 1984) (quoting Brown v. Felsen, 422 U.S. 139 n.10 (1979)).

[12] See, e.g., White, 653 F.2d at 150 n.5 ("This Court has acknowledged that the term 'res judicata' is now sweepingly used to incorporate both true res judicata and collateral estoppel." (citing Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc., 575 F.2d 530, 535-36 (5th Cir. 1978))).

[13] Shuler, 722 F.2d at 1256 n.2 (quoting White, 653 F.2d at 151).

[14] In re Howe, 913 F.2d 1138, 1143-44 (5th Cir. 1990).

[15] Id. at 1144.

[16] Carey Lumber Co. v. Bell, 615 F.2d 370, 377 (5th Cir. 1980).

judgments with "detailed recitations of the findings upon which they were based, findings which closely paralleled the language of . . . the Bankruptcy Act."[17]

The Supreme Court has also found that res judicata does not apply to state court decisions on dischargeability, both before and after the changes to the law governing the powers of bankruptcy courts.[18] In Brown v. Felsen, the petitioner argued that a debt was non-dischargeable because it was the result of fraud, deceit, and malicious conversion, and the respondent argued that the state court proceedings below found no fraud and therefore barred the issue on appeal.[19] The Supreme Court determined that res judicata did not require a bankruptcy court to follow a state court's prior decision in a case, finding:

> [T]he bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt. Adopting the rule respondent urges would take . . . issues out of bankruptcy courts well suited to adjudicate them, and force those issues onto state courts concerned with other matters, all for the sake of a repose the bankrupt has long since abandoned. This we decline to do.[20]

Later, the Supreme Court in Grogan v. Garner affirmed that "[s]ince 1970 . . . the issue of non-dischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code."[21] In that case, where the federal question

---

[17] Id. at 378.

[18] The major changes include the Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), and the Bankruptcy Amendments and Federal Judgeship Act of 1984.

[19] 442 U.S. 127, 129 (1979).

[20] Id. at 138-39.

[21] 498 U.S. 279, 284 (1991).

of non-dischargeability rested on "actual fraud,"[22] a creditor succeeded in a state court judgment for fraud, where the court required proof of fraud by a preponderance of the evidence. The creditor later sought "to minimize additional litigation by invoking collateral estoppel."[23] The Court found that if non-dischargeability were also governed by a preponderance of the evidence standard, then the bankruptcy court could apply collateral estoppel. But where non-dischargeability requires clear and convincing evidence, collateral estoppel would be inappropriate and the issue should be relitigated.[24] In other words, where the state court had decided the crucial element to non-dischargeability in the case below and had followed the same evidentiary standard, relitigation was unnecessary. But with differing evidentiary standards, the court need not defer to the state court decision. Just as a court need not defer to a state court decision that relied a different evidentiary standard, a bankruptcy court need not adopt a criminal assault finding of no self-defense – despite that finding's reliance on the strictest of evidentiary standards – that did not address the dischargeability issue of willful and malicious conduct. As we found in Winters v. Diamond Shamrock Chem. Co., the first condition that "must be met before collateral estoppel may be applied to bar relitigation of an issue previously decided by a court" is that "'the issue under consideration is identical to that litigated in the prior action.'"[25] Self-defense as litigated in a state criminal trial

---

[22] Id. at 280-81 ("Section 523(a) of the Bankruptcy Code provides that a discharge in bankruptcy shall not discharge an individual debtor from certain kinds of obligations, including those for money obtained by 'actual fraud.'").

[23] Id. at 284.

[24] Id. at 284-85.

[25] 149 F.3d 387, 391 (5th Cir. 1998) (quoting Copeland v. Merrill Lynch & Co., 47 F.3d 1415, 1422 (5th Cir. 1995)).

is not directly transferable to, and certainly not identical, to the question of self-defense in the context of willful and malicious behavior.

We have stated: "[T]he mere fact that a creditor previously reduced her claim to a judgment does not preclude the bankruptcy court from inquiring into the true nature of the debt – and ruling contrary to the first court's judgment, if necessary . . . ."[26] The Ninth Circuit has also held that a bankruptcy court need not apply collateral estoppel to an earlier state court judgment in a case, although the state court's ruling may establish a prima facie case of non-dischargeability.[27]

Applying collateral estoppel in this case would not uphold the purposes of that doctrine. We would not protect a party's "adversaries from the expense and vexation attending multiple lawsuits,"[28] nor would we "conserve[ ] judicial resources,"[29] since the bankruptcy court will be deciding the issue of willful and malicious injury regardless of our determination of collateral estoppel on the narrower issue of self-defense. Additionally, if the district court were to find that Vollbracht did not act willfully and maliciously, this would not necessarily be inconsistent with the state court's finding that Vollbracht did not act in self-defense. Although self-defense may be one component of a willful and malicious finding, a court could find willful and malicious injury or lack thereof based on the weight of other evidence not related to self-defense considered by the court.

Finally, we decline to reach the broad conclusion that issues litigated in

---

[26] Dennis v. Dennis, 25 F.3d 274, 278 (5th Cir. 1994) (citations omitted).

[27] In re Rahm, 641 F.2d 755, 757 (9th Cir. 1981) ("[I]n this circuit a prior state court judgment has no collateral estoppel force on a bankruptcy court considering dischargeability unless both parties agree to rest their cases on that judgment. At most, a prior judgment establishes a prima facie case of non-dischargeability which the bankrupt is entitled to refute on the basis of all relevant evidence." (citations omitted)).

[28] Montana v. United States, 440 U.S. 147, 153 (1979).

[29] Id.

state courts should, through collateral estoppel or res judicata, prevent a bankruptcy court from re-considering those issues in making an independent determination of dischargeability. The bankruptcy court (and the district court, in reviewing the bankruptcy court's findings) needs the ability to consider all relevant issues in making an accurate determination of dischargeability, and one of the cases upon which the dissent relies has indicated that "even where it arguably meets a technical muster, 'the rule [of collateral estoppel] is neither mandatory nor mechanically applied.'"[30] Creating a new standard that broadly militates for collateral estoppel would invent an unnecessary rule in this circuit that impedes the ability of bankruptcy judges to reach accurate and fair results.

We REVERSE and REMAND to the bankruptcy court for further proceedings consistent with this opinion. Berry's outstanding motion to strike a portion of Vollbracht's brief is DENIED AS MOOT.

---

[30] Norman v. Bucklew, 684 So.2d 1246, 1253 (Miss. 1996) (quoting Jordan v. McKenna, 573 So. 2d 1371, 1375 (Miss. 1990)).

EDITH BROWN CLEMENT, Circuit Judge, dissenting:

While I concur in the reversal of the judgment, I respectfully dissent from the majority's holding that Volbracht may relitigate self-defense on remand to the bankruptcy court in an effort to prove that his actions were not "willful and malicious" under 11 U.S.C. § 523(a)(6).

I agree with the majority's holding that Volbracht's criminal conviction for simple assault in Mississippi does not automatically compel the conclusion that his actions were "willful and malicious" under § 523(a)(6), because the assault statute permits a conviction for negligent infliction of injury. See MISS. CODE ANN. § 97-3-7. Thus, in order to determine whether Volbracht's actions constituted "willful and malicious" conduct, the court would have to make an independent finding.

I also agree with the majority's statement of law that for conduct to be considered "willful and malicious," it must satisfy (1) the subjective/objective test of Kawaauhau v. Geiger, 523 U.S. 57 (1998) and (2) not be sufficiently justified under the circumstances. As to the first prong, I strongly agree with the majority's finding that Volbracht's "haymakers" on Berry easily satisfy Kawaauhau's subjective/objective test.

As to the second prong, however, I reject the majority's holding that Volbracht be allowed to present evidence of self-defense on remand as justification for his actions against Berry. I consider Volbracht to be collaterally estopped from again asserting the claim of self-defense, because it was previously litigated, rejected, and essential to his conviction in his state criminal trial for assault. See, e.g., Raju v. Rhodes, 7 F.3d 1210, 1214–15 (5th Cir. 1993) (applying Mississippi law and stating that parties are precluded from relitigating a specific issue when it has actually been litigated, determined by, and essential to the judgment in the prior action); Norman v. Bucklew, 684 So.2d

1246, 1253 (Miss. 1996); see also In re Granoff, No. 05-33028, 2006 WL 1997408, at *8 (Bankr. E.D. Pa. June 6, 2006) (holding that a criminal conviction for assault is preclusive on the issue of self-defense as a justification for debtor's conduct, because "[t]he state court must have considered the debtor's claim of self-defense and found the claim not to be credible, or the debtor could not have been convicted of simple assault"). Moreover, even though Volbracht bore the initial burden of production on self-defense, his success in doing so then required the prosecution to bear the burden of persuasion in proving the absence of self-defense beyond a reasonable doubt. See Harris v. State, 937 So. 2d 474, 481 (Miss. App. 2006) (citing Heidel v. State, 587 So. 2d 835, 843 (Miss. 1991)). As the level of proof required in the civil action is the much lower preponderance-of-the-evidence standard, the factual rejection of self-defense in the prior criminal trial supports the application of collateral estoppel in the subsequent civil action. Accordingly, Volbracht should not receive a second bite at the "self-defense" apple, as the majority would allow. Without this defense, Volbracht's "haymakers" on Berry would undoubtedly have been considered "willful and malicious" and his debt would not have been discharged.

The majority recognizes that the bankruptcy court could preclude the "narrow" issue of self-defense on remand. Nevertheless, the majority goes on to state that Volbracht could present facts that would support his self-defense claim, i.e., evidence as to Berry's actions and reasons as to why Volbracht would be less culpable. Thus, under the majority's rationale, Volbracht would essentially be able to present all of the facts related to his self-defense claim, even if the bankruptcy court precluded the issue of self-defense. I do not see the distinction that the majority draws, cannot agree with its reasoning, and therefore respectfully dissent. I would have rendered judgment in favor of Berry and not discharged Volbracht's debt.